UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

BAD RIVER BAND OF LAKE SUPERIOR CHIPPEWA,

*Plaintiff*

-v.-

UNITED STATES ARMY CORPS OF ENGINEERS,

*Defendant*

and

ENBRIDGE ENERGY, LIMITED PARTNERSHIPS,

*Intervenor-Defendant.*

Civil Case No: 1:26-cv-01171-TNM

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO U.S. ARMY CORPS OF ENGINEERS' MOTION TO STRIKE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

I. Introduction .......... 1

II. Legal Standard .......... 2

III. Argument .......... 4

  A. The Band's Declarations Are Not Extra-Record Evidence. .......... 4

  B. The Corps Has Not Met the Motion to Strike Standard. .......... 9

IV. Conclusion .......... 11

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

**Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
282 F.3d 818 (D.C. Cir. 2002) ....................2, 6

*Bailey v. Ebbert*,
No. 17-5254, 2018 WL 6167346 (D.C. Cir. Nov. 19, 2018) ....................7, 11

*Bartell Ranch LLC v. McCullough*,
No. 21-cv-00080, 2022 WL 16951221 (D. Nev. Nov. 15, 2022) ....................8

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*,
78 F. Supp. 3d 208 (D.D.C. 2015) ....................2

**Cobell v. Norton*,
224 F.R.D. 1 (D.D.C. 2004) ....................3, 9, 10

*CTS Corp. v. EPA*,
759 F.3d 52 (D.C. Cir. 2014) ....................6

*Del. Riverkeeper Network v. Del. River Basin Comm'n*,
No. 21-cv-01108, 2023 WL 2728802 (D.N.J. Mar. 31, 2023) ....................8

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ....................2

*Gates v. District of Columbia*,
825 F. Supp. 2d 168 (D.D.C. 2011) ....................3

*Hisp. Affs. Project v. Acosta*,
263 F. Supp. 3d 160 (D.D.C. 2017) ....................8

*Hisp. Affs. Project v. Acosta*,
901 F.3d 378 (D.C. Cir. 2018) ....................8

*Kershenbaum v. Wool*,
13 F.R.D. 333 (D.D.C. 1952) ....................10

*Klamath Siskiyou Wildlands Ctr. v. BLM*,
No. 12-cv-1558, 2014 WL 525116 (D. Or. Feb. 6, 2014) ....................8

*Lockey v. Fudge*,
No. 21-5205, 2022 WL 4285622 (D.C. Cir. June 1, 2022) ....................3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 2

*Nat. Res. Def. Council v. Blank*,
No. C-12-05380, 2013 WL 2450110 (N.D. Cal. June 5, 2013) .......... 6

**Nwachukwu v. Rooney*,
362 F. Supp. 2d 183 (D.D.C. 2005) .......... 3, 4, 9, 11

*Pilkin v. Sony Interactive Ent. LLC*,
No. 20-7115, 2021 WL 2451299 (D.C. Cir. Mar. 19, 2021) .......... 11

*Pigford v. Veneman,*
215 F.R.D. 2 (D.C. Cir. 2003) .......... 10

*Russell-Murray Hospice, Inc. v. Sebelius*,
724 F. Supp. 2d 43 (D.D.C. 2010) .......... 6

*Shaw v. District of Columbia*,
No. 17-00738, 2018 WL 5044248 (D.D.C. Sep. 11, 2018) .......... 10

**Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) .......... 2, 5

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*,
647 F.2d 200 (D.C. Cir. 1981) (per curiam) .......... 3

**Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 2, 4

*Uzylan v. Solis*,
706 F. Supp. 2d 44 (D.D.C. 2010) .......... 4, 9

**Weng v. Solis*,
842 F. Supp. 2d 147 (D.D.C. 2012) .......... 3, 10, 11

**Other Authorities**

Wright & Miller, 5C Federal Practice & Procedure Civ. § 1382 (3d ed.) .......... 9, 11

Fed. R. Civ. P. 12(f) .......... 3, 9, 10

U.S. Constitution Article III .......... 2

## I. INTRODUCTION

The Court should deny the Army Corps' Motion to Strike Extra-Record Materials (Doc. 31) ("Corps' Mot. to Strike") because it is a strawman argument. The Corps sets up a strawman on the grounds that the Second Declaration of Naomi Tillison (Doc. 27-2) and its attachments (Docs. 27-3–27-10) are extra-record evidence and should be struck by this Court. The Corps, joined by Enbridge (Doc. 32), focuses its argument entirely on the administrative record and the confines of record review, while ignoring why the Bad River Band attached the declarations in the first place. The Band submitted all of its declarations, including the one subject to the Corps' Motion to Strike, to support its standing to bring this lawsuit. The Second Tillison Declaration and attachments help demonstrate the threatened and actual injury and harm that the Band and its members will suffer as a result of the Corps' decision to issue a Permit to Enbridge Energy to construct the Project (Docs. 22-2–22-6, 27-2).

The legal issue on the merits is whether the Corps adequately considered impacts prior to issuing the Permit consistent with requirements of the Clean Water Act ("CWA") and NEPA ("National Environmental Policy Act"). And in order to support its challenge, the Band must demonstrate injury related to its CWA and NEPA claims. In addition to the individual Band member declarations, the Band attached declarations from Bad River Band Chairwoman Arbuckle (Doc. 22-2) and Mashkiiziibii Natural Resources Department (MNRD) Director Naomi Tillison (Doc. 22-3) to outline how the Project will injure and harm the Band and its ability to protect the health, safety, and welfare of its tribal members, as well as the environment within and upstream of the Band's Reservation. MNRD is part of the Band's governing body and is responsible for monitoring environmental conditions in the area. The Corps asks this Court to strike Director Tillison's Second Declaration on the red herring argument that the Band failed to move to supplement the record and that it does not qualify as extra-record evidence. The Corps

ignores that supplementing the record is not necessary for standing declarations alleging harm. Further, the Corps failed to acknowledge, let alone address, the Court's high standard to prevail on a motion to strike. The Corps' Motion to Strike should be denied.

## II. LEGAL STANDARD

A plaintiff must have "standing" to bring a case in federal court because Article III of the U.S. Constitution limits the courts' jurisdiction to "cases" and "controversies." *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019). To establish standing, plaintiffs must show (1) an "injury in fact," (2) that the injury is caused by defendants' actions, and (3) a "likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citations and quotation marks omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff "bears the burden of establishing" standing. *Steel Co.*, 523 U.S. at 104 (citation omitted).

In so demonstrating standing, the Band is not confined to the administrative record. *See Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 282 F.3d 818, 830 (D.C. Cir. 2002) (stating that those challenging agency action must establish standing and, in so doing, "are not confined to the administrative record," but rather "must support their claim of injury with evidence"). Although judicial review of agency action is typically confined to the administrative record, "plaintiffs may submit extra-record evidence to establish standing." *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, 78 F. Supp. 3d 208, 217 (D.D.C. 2015); *see also Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002). Indeed, plaintiffs have an obligation to establish standing and "*must* supplement the record to the extent necessary to explain and substantiate [their] entitlement to judicial review." *Chesapeake Climate Action Network*, 78 F. Supp. 3d at 217 (quoting *Sierra Club*, 292 F.3d at 900)).

Motions to strike "as a general rule, are disfavored." *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam). This Court considers "[s]triking pleadings [to be] an extreme and disfavored remedy." *Weng v. Solis*, 842 F. Supp. 2d 147, 161 (D.D.C. 2012); *see also Lockey v. Fudge*, No. 21-5205, 2022 WL 4285622, *1 (D.C. Cir. June 1, 2022) (noting that motions to strike often "proliferate pages and burden the court unnecessarily"). Thus, while these decisions are "vested in the trial judge's sound discretion," *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011), they are typically granted only when needed to avoid litigating "spurious issues," *Weng*, 842 F. Supp. 2d at 156. When considering a motion to strike, "the court will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike. Consequently, the burden lies with the movant." *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 190 (D.D.C. 2005) (internal citations omitted).

To prevail on a motion to strike, the movant must demonstrate that the material it seeks to strike is either "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Redundant material refers to "allegations that constitute a needless repetition of other averments in a pleading." *Cobell v. Norton*, 224 F.R.D. 1, 3 (D.D.C. 2004). "'Immaterial' matter consists of statements and averments bearing no essential or important relationship to the claim for relief or the defenses being pled." *Id.* Any material that "fairly presents a question of law or fact which the court ought to hear" cannot be stricken as "impertinent," *id.* at 5 (internal citation omitted), and "scandalous" statements are only those containing "allegations 'that unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court," *id.* (quoting 2 Moore's Federal Practice § 12.37[3] at 12–97). The Court will strike immaterial statements "only

if [they] are also prejudicial or scandalous." *Uzylan v. Solis*, 706 F. Supp. 2d 44, 52 (D.D.C. 2010); *see also Nwachukwu*, 362 F.Supp.2d at 190.

## III. ARGUMENT

### A. The Band's Declarations Are Not Extra-Record Evidence.

The Band's declarations demonstrate elements of standing, including injury and harm to the Band as a result of the Project.[1] The Band has a duty to demonstrate that it is harmed by the Project and that the harm is traceable to the Defendant. *Steel Co.*, 523 U.S. at 104. The Band submitted declarations in its opening brief from tribal officials and tribal members to demonstrate the threatened injury the Project will cause to the Band and its members. Pl.'s Mot. for Summ. J. 8–10, 14, 16, 39, 41 (Doc. 22-1); Declarations (Docs. 22-2–22-6). The Band provided an additional declaration in its reply brief by a tribal official to demonstrate the actual injury the Project is causing to the Band and its interests. *See* Pl.'s Reply Mem. in Supp. of Mot. for Summ. J. (Doc. 27) ("Band's Reply"); Second Declaration of Naomi Tillison (Doc. 27-2) and its attachments (Docs. 27-3–27-10) ("Second Tillison Declaration").[2]

The harm outlined in the reply includes the harm that horizontal directional drilling ("HDD") inadvertent releases are causing to wetlands and waterways as construction of the Project continues and that a spill of Natural Gas Liquids ("NGLs") has happened as a part of the

---

[1] To the extent that Enbridge has argued that the Band does not have standing due to a lack of jurisdiction, that argument goes to the legal merits of the case where the parties disagree on the scope of the Corps' jurisdiction and is not the subject of this motion.

[2] The Corps makes a footnote argument that the Court should also strike the declarations attached to the Band's motion for summary judgment and in the next sentence explains that the Corps did not move to strike those declarations. Corps' Mot. to Strike 5, n.1. The Court should reject this argument and decline to strike any of the Band's declarations. Because the Motion to Strike specifically addresses the Second Tillison Declaration, this response focuses on the substance of that Declaration. However, the Band maintains that all declarations collectively go to the its standing by demonstrating the threatened and actual injury and harm the Band and its members will suffer as a result of Project construction.

construction of the Project. Band's Reply 21, 44. MNRD monitors all Project-related events, and these construction-related harms impair the Band's ability to protect the health, safety, and welfare of tribal members.

With respect to HDD inadvertent releases, the Second Tillison Declaration paragraphs referenced in the Band's Reply list all of the HDD inadvertent releases that occurred as a result of the Project as of the date of the Declaration. The attachments to the Second Tillison Declaration are simply notices from the Wisconsin Department of Natural Resources ("WDNR"), as reported by Enbridge. Band's Reply 21; Second Tillison Decl. ¶ 14. MNRD is apprised of the HDD inadvertent releases because all waters that the Project crosses flow downstream into the Bad River Band's Reservation. The Band's initial concerns regarding the potential harm of HDD inadvertent releases to water and water quality remain, as HDD inadvertent releases have now occurred as part of Project construction.

With respect to the NGL spill, the Second Tillison Declaration paragraphs referenced in the Band's Reply also document that an NGL spill occurred, that the Band received notice of the spill from WDNR (as reported by Enbridge), that WDNR gave notices to Enbridge, and that Enbridge constructed a "temporary bypass" to remedy the pipeline leak. Band's Reply 44, Second Tillison Decl. ¶¶ 3–7. Again, the Band's concerns regarding potential harm from a gas spill remain, as an NGL spill has now occurred.

Defendants do not dispute or challenge the accuracy of the information within the Second Tillison Declaration; instead, they ask the Court to strike the Declaration solely on the grounds that it does not qualify as extra-record evidence. Corps' Mot. to Strike 3–10 (Doc. 31). However, the Band was not required to use only material in the administrative record for the purposes of demonstrating harm and injury. *See Sierra Club*, 292 F.3d at 899 (Plaintiffs "are not confined to

the administrative record" when establishing standing and "must support their claim of injury with evidence." (citing *Amfac Resorts*, 282 F.3d at 830)). This is because "adherence to the principle that judicial review is limited to the administrative record does not imply that a district court loses its ability to take evidence or make determinations in limited circumstances as relating to jurisdictional facts." *Russell-Murray Hospice, Inc. v. Sebelius*, 724 F. Supp. 2d 43, 55 n.12 (D.D.C. 2010) (internal citation and quotes omitted).[3]

The Corps spills a lot of ink attempting to show that the Second Tillison Declaration does not meet the exceptions for extra-record evidence. Not only is it unnecessary for the Band to make that showing as a legal matter, but it is also illogical for it to attempt to do so given the nature and the timing of the harm. One of the Corps' first complaints is the timing of the information contained in the Second Tillison Declaration. Namely, that the documents demonstrating the HDD inadvertent release and the NGL spill are dated after the Corps made its permitting decision. But the timing of the harm is irrelevant for purposes of standing declarations. *See, e.g.*, *Russell-Murray Hospice*, 724 F. Supp. 2d at 55 n.12 (denying motion to strike post-record material going to standing); *Nat. Res. Def. Council v. Blank*, No. C-12-05380, 2013 WL 2450110, at *4 (N.D. Cal. June 5, 2013) (refusing to strike declarations submitting "post-decision information" because the materials go to the "question of harm"). The HDD inadvertent release and the NGL spill occurred during construction of the Project, which could begin only after the Corps granted Enbridge a permit. Logically, these events could not have pre-

---

[3] The Corps' citation to *CTS Corp. v. EPA*, 759 F.3d 52, 64–65 (D.C. Cir. 2014) is also inapposite. There, a party sought to *sua sponte* supplement the record with an expert report, and argued it be allowed to do so in only a footnote. *Id.* at 64. This is a far cry from the Band's submission of the Second Tillison Declaration here to better illustrate its injury—without going to the merits of this case.

dated the Corps' permitting decision. The fact that some of the harms that the Band alleged have turned from threatened injuries to actual injuries should not bar the Band from submitting them.

The Corps also uses its motion as an opportunity to highlight what it did consider as part of its decision-making process within the administrative record. For example, the Corps claims that "the record is replete with the Corps' analysis of HDD and the potential for inadvertent returns based on information available to the Corps at the time of its decision." Corps' Mot. to Strike 8. The Corps also emphasizes that its purported decision-making was reasonable and reasonably explained. *Id*. at 9–10. These arguments are redundant, inappropriate for a motion to strike, and do not address any information contained in or attached to the Second Tillison Declaration. *Bailey v. Ebbert*, No. 17-5254, 2018 WL 6167346, *1 (D.C. Cir. Nov. 19, 2018) ("Because the points raised in the motion have been presented in appellant's reply, there was no need to burden this court with a motion to strike.")

Further, these arguments misconstrue the point of the Declaration and its attached information, which is to convey the harm the Band is experiencing as a result of the Permit to construct the Project. The Corps claims that "[d]ata on inadvertent [releases] that postdate the Corps' decision will not help the Court determine whether the Corps' information gathering, disclosure, and analysis were reasonable based on information available at the time." Corps' Mot. to Strike 9. However, none of the information in the Second Tillison Declaration includes any additional analysis of HDD inadvertent releases or their impacts on waterways. There are no reports or evaluations of what caused the HDD inadvertent releases. There is no additional "data" to consider other than the fact that HDD inadvertent releases have happened and have harmed the Band. None of the information included goes to the merits of the Band's prior legal arguments.

Other arguments from the Corps are similarly feeble attempts to disregard the interests of the Band and the harms that the Band and its members face as a result of the Project. The Corps states that the Band "did not advocate for its own standing in that motion or in its Complaint." *Id.* at 5, n.1. However, the Band rests on its pleadings and the Court's ability to discern why the Band included its interests as a plaintiff in the Complaint, Compl. ¶¶ 11–13 (Doc. 1), and the history of the Band and its members' concerns in the Factual Background of its Motion for Summary Judgment, Band's Mot. for Summ. J. 3–11 (Doc. 22-1).

To the extent that this Court finds elements of the Second Tillison Declaration (or any of the Band's declarations) unnecessary to satisfy the elements of standing, it can simply disregard that information without having to strike it. This practice is consistent with caselaw within the D.C. Circuit and across the country. *Hisp. Affs. Project v. Acosta*, 263 F. Supp. 3d 160, 175 (D.D.C. 2017) (disregarding, rather than striking, standing declaration materials going to the merits), *rev'd on other grounds*, 901 F.3d 378 (D.C. Cir. 2018); *Del. Riverkeeper Network v. Del. River Basin Comm'n*, No. 21-cv-01108, 2023 WL 2728802, at *7 (D.N.J. Mar. 31, 2023) ("[T]his Court will deny the motion to strike the declarations. This Court will consider the declarations only to the extent that they are offered in support of Plaintiffs' standing."); *Bartell Ranch LLC v. McCullough*, No. 21-cv-00080, 2022 WL 16951221, at *4 (D. Nev. Nov. 15, 2022), *aff'd sub nom. W. Watersheds Project v. McCullough*, 2023 WL 4557742 (9th Cir. July 17, 2023) (characterizing motion to strike as a "waste of time" and denying it because the court "will not consider any improper merits arguments offered in the challenged declarations"); *Klamath Siskiyou Wildlands Ctr. v. BLM*, No. 12-cv-1558, 2014 WL 525116, at *5 (D. Or. Feb. 6, 2014) (declining to strike challenged paragraphs from standing declaration that were offered

only to support standing and disavowing reliance on the declarations except as they are relevant to standing). The Corps' motion to strike should be denied.

**B. The Corps Has Not Met the Motion to Strike Standard.**

Nothing in the Corps' motion meets the high bar to overcome this Court's disfavor of motions to strike. The Corps has failed to show that the material at issue meets Rule 12(f)'s requirement of being "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Even if the Corps were to make such a showing, it has offered no proof that the Second Tillison Declaration and attachments at issue here cause any prejudice to the Corps—a showing typically required by this Court in order to grant a motion to strike. *See, e.g.*, *Uzylan*, 706 F. Supp. 2d at 52; *Nwachukwu*, 362 F. Supp. 2d at 190; *see also* Wright & Miller, 5C Federal Practice & Procedure Civ. § 1382 (3d ed.) (motions to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action. Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party."). Therefore, the Court should deny the Corps' motion.

Neither the Second Tillison Declaration nor any of the attachments fall within Rule 12(f). These materials are clearly not redundant, as they do not amount to "needless repetition of other averments in a pleading." *Cobell*, 224 F.R.D. at 3. Nor are they immaterial. The Second Tillison Declaration and attachments address the Band's standing because they show the harm the Band is experiencing as a result of the Corps' permitting decision. *See supra* Section III.A. As stated above, the fact that some of the harms the Band alleged have turned from threatened injuries to actual injuries should not bar the Band from submitting them. To be immaterial, statements must bear "no essential or important relationship to the claim for relief or the defenses being pled."

*Cobell*, 224 F.R.D. at 3. Here, the Second Tillison Declaration and its attachments bear a clear relationship to the Band's claim for relief. They likewise "fairly present a question of . . . fact" that the Court may consider—again, not to decide the merits of the case, but to provide necessary context for the Band's standing and need for relief—and thus are not impertinent. *Id.* at 5; *see supra* Section III.A.

The Second Tillison Declaration and attachments likewise are not "scandalous matter." These materials in no way malign the Corps or Enbridge, nor "state[] anything in repulsive language that detracts from the dignity of the court." *Cobell*, 224 F.R.D. at 5. These materials state facts related to spills that have occurred since the Corps' permitting decision at issue in this case. *See, e.g.*, Second Tillison Decl. ¶¶ 3, 10–13. Rule 12(f) does not contemplate barring facts. Even if those facts were to cast a party in a derogatory light, that is insufficient to meet Rule 12(f)'s "scandalous" requirement. *See Weng v. Solis*, 842 F. Supp. 2d 147, 161 (D.D.C. 2012) (citing *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)); *see also Kershenbaum v. Wool*, 13 F.R.D. 333, 333 (D.D.C. 1952) (denying motion to strike where allegation was "probably . . . alleged in order to prove a claim for punitive damages").

Even if the Corps had demonstrated that the disputed materials somehow fit into one of the above categories (which it has not), its motion to strike would still fail. The D.C. District Court has required a showing of prejudice in order to grant a motion to strike—even in instances where it found the material at issue was both immaterial and impertinent. *See Shaw v. District of Columbia*, No. 17-00738, 2018 WL 5044248, *5 (D.D.C. Sep. 11, 2018). That the Corps makes no mention whatsoever of prejudice in its motion to strike is fatal to its argument.

The disfavor of motions to strike applies with full force to this case. Including the Second Tillison Declaration and attachments in no way raises "spurious" issues. *See Weng*, 842 F. Supp.

2d at 156. To the extent the Corps believes the material is irrelevant to this Court's decision on the Motions for Summary Judgment, it could have raised those arguments in its pleadings. *See, e.g.*, *Pilkin v. Sony Interactive Ent. LLC*, No. 20-7115, 2021 WL 2451299, *1 (D.C. Cir. Mar. 19, 2021) ("[M]erits arguments in opposition to a dispositive motion should be presented in an opposition to such a motion, not a motion to strike."); *Bailey v. Ebbert*, No. 17-5254, 2018 WL 6167346, *1 (D.C. Cir. Nov. 19, 2018) ("Because the points raised in the motion have been presented in appellant's reply, there was no need to burden this court with a motion to strike."). In short, the Corps has not carried its burden. *Nwachukwu*, 362 F. Supp. 2d at 190. This Motion should be denied.

## IV. CONCLUSION

The Court should deny the Corps' Motion to Strike and reject its arguments that the Band's Declarations are extra-record evidence and that the Band needed to move to supplement the record. Caselaw is clear that moving to supplement the record is unnecessary to introduce evidence on standing. The Court should also reject the Corps' Motion because the Corps has not and cannot meet the standard to satisfy a motion to strike. In the event that the Court finds portions of the Second Tillison Declaration unnecessary to establish the Band's standing, it may disregard that information of its own accord without striking it.

Respectfully submitted this 2nd day of November 2026,

/s/Stefanie Tsosie
Stefanie Tsosie*
EARTHJUSTICE
810 3rd Avenue, Suite 610
Seattle, WA 98104
Phone: (206) 343-7340
Fax: (720) 550-5757 or
7205505757@egoldfax.com
E-mail: stsosie@earthjustice.org

Gussie Lord (DC Bar No. 1009826)
Joseph V. Langkilde III (DC Bar No. 90006198)
EARTHJUSTICE
1001 G St. NW, Ste. 1000
Washington, D.C. 20001
Phone: (202) 667-4500
Fax: (720) 550-5757 or
7205505757@egoldfax.com
E-mail: glord@earthjustice.org
jlangkilde@earthjustice.org

Christopher Meyer (NY State Bar No. 6015028)
EARTHJUSTICE
48 Wall Street, 15th Floor
New York, NY 10005
Phone: (212) 845-7376
Fax: (720) 550-5757 or
7205505757@egoldfax.com
E-mail: cmeyer@earthjustice.org

**Admitted Pro Hac Vice*